ment of the check, and an adjournment was granted for the purpose of calling the younger Eisenstein as a witness. On the adjourned day, Harry A. Eisenstein testified that he knew of the bank's refusal to certify the check, and that it had thereafter been deposited to the credit of the firm, composed of his father and himself. He further testified that he assumed, without any knowledge on the subject, that the check had not been paid, and so informed the respondent upon his inquiring as to such payment.

In his report, the referee finds that:

This testimony must be considered as not quite meeting the respondent's case. Giving to him the utmost benefit of it, as far as it goes, and considering the other features of the case in the light most favorable to him, it still clearly appears that the respondent, by transferring the check in question to Israel Eisenstein with the direction that the proceeds should be credited on account of his prior indebtedness for moneys collected and retained by him, became guilty of the conversion of the money which he should have paid over to Schuler; and it also remains clearly established that he unduly delayed a settlement with Schuler. * * * The respondent pleads youth (he was 23 year old at the time of the conversion), inexperience, and mental worry on account of his wife's illness as a partial excuse, and regrets the occurrence, and prays for a merciful disposition of his case, for which it seems he has presented reasons which deserve consideration. He has also submitted affidavits on character."

The respondent has been guilty of misconduct in his office as attorney which cannot be overlooked. He is therefore suspended from practice for one year, with leave to apply for reinstatement at the expiration of that term, upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon. All concur.

---

(175 App. Div. 276)

## R. & L. CO. v. METZ.

(Supreme Court, Appellate Division, First Department. June 23, 1916.)

1. FRAUDS, STATUTE OF ⊚⟶130(1)—OPERATION—CONTRACTS PARTLY WITHIN STATUTE.

If a contract is partly within the statute of frauds, the entire instrument is unenforceable.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 280, 282; Dec. Dig. ⊚⟶130(1).]

2. FRAUDS, STATUTE OF ⊚⟶84—SALES OF GOODS—CONTRACT WITHIN STATUTE.

An agreement to agree to sell is a contract to sell, within the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 154–161; Dec. Dig. ⊚⟶84.]

3. FRAUDS, STATUTE OF ⊚⟶83—SALES OF GOODS—CONTRACTS WITHIN STATUTE—GOODS TO BE ACQUIRED.

Where plaintiff was to transfer certain trucks, if acquired by him, to a corporation to be formed by defendant, who was to pay, or cause the corporation to pay, over $50 therefor, *held* that the contract was within the statute of frauds (Laws 1911, c. 571), specifically covering goods to be acquired in the future or upon a contingency.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 147–153; Dec. Dig. ⊚⟶83.]

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Special Term, New York County.

Action by the R. & L. Company against Herman A. Metz. From an order overruling plaintiff's demurrer to a separate defense, the plaintiff appeals. Affirmed.

The following is the opinion of Pendleton, J., at Special Term:

This is a trial brought on as a contested motion of an issue of law raised by plaintiff's demurrer to a first separate defense in the amended answer to the first cause of action set forth in the complaint. The defense demurred to is the statute of frauds, to the effect that the agreement alleged is for the sale of goods and that the requirements of the statute were not complied with.

The one question thus raised is whether the contract as alleged in the complaint is a contract to sell or a sale of goods within the meaning of the statute of frauds. The complaint, after the allegations made by way of inducement and to show defendant's connection with the matter, sets forth in subdivision 27 the precise agreement or promise upon which the alleged liability is founded substantially as follows: That plaintiff agreed not to then retake possession of certain trucks, but allow the Mail Company and defendant to use them until August 13, 1913, and to then enter into an agreement with a corporation to be formed by defendant, containing at defendant's request provisions that plaintiff would then take possession of the trucks, cause them to be sold at public auction, and, if purchased by it, sell its right, title, and interest therein to said corporation, and defendant, in consideration of these promises, agreed to pay plaintiff some $66,666.37 in the following manner, viz., to incorporate a corporation and cause it to enter into the above agreement with plaintiff to take over the trucks, defendant to pay or cause said company to pay plaintiff $6,666.37 in cash and interest at 6 per cent. on the above sum of $66,666.37 from July 14, 1913, to the date of the conveyance to the corporation of the right, title, and interest in said trucks, and cause the corporation to give plaintiff 12 promissory notes, of $5,000 each, indorsed by defendant, or an indorser acceptable to plaintiff, and secured by conditional bills of sale of said trucks executed by the corporation.

[1-3] In other words, in consideration of plaintiff's agreement to allow the use of the trucks for a certain period, and then if it acquired title thereto to sell and transfer them, defendant agreed to pay a sum certain in the manner specified. The existing statute of frauds (chapter 571, Laws 1911) provides that a contract to sell or a sale of any goods of the value of $50 or more shall not be enforceable unless some note or memorandum is signed, or other things done specified in the statute. The same statute defines a contract to sell goods as "a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price," and specifically provides that the goods which form the subject of a contract to sell may be acquired by the seller after the making of the contract, or their acquisition may depend upon a contingency which may or may not happen. It is also well settled that, if part of an entire contract is within the statute, the whole contract is unenforceable. De Beerski v. Paige, 36 N. Y. 537; Dow v. Way, 64 Barb. 255; Shaffer v. Martin, 25 App. Div. 501, 49 N. Y. Supp. 853; Van Alstine v. Wimple, 5 Cow. 162. An agreement to agree to sell is a contract to sell. By the contract as alleged plaintiff agrees in effect to sell and transfer the trucks in consideration of defendant's promise. The fact that this is made to depend on plaintiff's acquiring title subsequent to the making of the agreement, or that there are other provisions in the contract, is not material, as above pointed out. The essence of the contract is, among other things, a sale and transfer of title to the trucks by plaintiff, and the delivery or causing to be delivered by defendant of certain notes of a corporation, indorsed as specified. A contract of exchange is within the statute. Plaintiff agreed to transfer goods, and defendant to deliver or cause to be delivered notes, choses in action. Combs v. Bateman, 10 Barb. 573; Chapin v. Potter, 1 Hilt. 366. Plaintiff cites Blair et al. v. Lynch, 20 Wkly. Dig. 575. In that case plaintiff bought property *for* defendant. It was not a sale or agreement *to sell to* defendant. It was held not to come within the statute. The decision has no application here. The contract clearly includes an agreement to sell and transfer, and this, under the above cases, avoids the entire contract.

It is urged on behalf of the plaintiff that this question has been in effect passed on and the contract supported by the Appellate Division in its opinion, affirmed by the Court of Appeals, on the demurrer to the former or original answer, especially in relation to the defenses to the second cause of action, not the one here involved, which is the first cause of action. An examination of that opinion, however, in connection with the record and the cases cited, shows conclusively that this is not the case. There were two defenses in the original answer to the second cause of action—one that the promise was to answer for the debt or default of another, and the other that the agreement was for the sale of goods at a price of over $50. The clauses of the opinion relied on in plaintiff's brief evidently referred to the question raised by the first of the two above-mentioned defenses. The second defense was summarily disposed of by the opinion at Special Term, and is not specifically referred to in the opinion of the Appellate Division. The cases cited in the opinion all turned on whether the promise was to answer for the debt or default of another. In none was the sales clause of the statute of frauds set up or relied on. Some criticisms are made as to the form of the separate defense, but in view of the allegations of the complaint they seem to be without substantial merit.

Demurrer overruled, with costs. Submit order on notice.

See, also, 165 App. Div. 533, 150 N. Y. Supp. 843.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

H. A. Rubino, of New York City, for appellant.
I. H. Levy, of New York City, for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, with leave to plaintiff to withdraw demurrer, on payment of costs in this court and in the court below, on the opinion of Pendleton, J., at Special Term. Order filed.

───────────

(173 App. Div. 873)

LEASK et al. v. BEACH et al.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. TRUSTS ☞316(1)—RIGHT OF TRUSTEES TO COMMISSIONS—MULTIPLE COM-
　　MISSIONS.
　　Where testator's will gave his executors a sum in trust to pay the in-
come to his brother, directing that on the brother's death, when half was
given away absolutely and half held by the executors on further trusts,
"it shall be paid over" to his executors, such executors, on the brother's
death, were not entitled to receive multiple commissions on the half held
by them in trust; the only intention of testator in using the quoted lan-
guage being to effect that on the death of the brother the executors should
pay over half the trust fund and continue to hold the other half in trust.
　　[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 445–454; Dec.
Dig. ☞316(1).]

2. EXECUTORS AND ADMINISTRATORS ☞495(2)—RIGHT TO DOUBLE COMMIS-
　　SIONS.
　　Where testator's will, in several similar clauses, gave to his executors
money in trust to invest and pay over the income to beneficiaries for life,
directing that the principal revert to testator's residuary estate upon the
beneficiaries' death, the executors, having received full commissions as
such, were not entitled to commissions as trustees for receiving the mon-
eys directed to be held in trust during the beneficiaries' lives in the sev-